IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Christine L.,[1]

        Plaintiff,

v.

NANCY BERRYHILL,
ACTING COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

Civ. No. 3:18-cv-00480-MC

OPINION AND ORDER

---

MCSHANE, Judge:

    Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for social security disability insurance benefits. This court has jurisdiction under 42

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in the case.

1 – OPINION AND ORDER

U.S.C. §§ 405(g) and 1383(c)(3). On March 31, 2014, Plaintiff filed for disability insurance benefits, alleging disability as of December 22, 2006. Tr. 18.[2] Following a hearing, the Administrative Law Judge (ALJ) determined Plaintiff was not disabled under the Social Security Act. Tr. 36.

In this rather unusual social security case, Plaintiff's primary care physician consistently diagnosed Plaintiff with fibromyalgia over the course of nearly ten years. The record is silent, however, with regard to what diagnostic testing, if any, supported the diagnosis. Without inquiring further into the provider's diagnosis, the ALJ rejected all symptom testimony related to fibromyalgia.[3] This error seemingly impacted the ALJ's finding that Plaintiff was less-than fully credible as to the extent of her limitations, as well as the ALJ's weighing of the opinion of Plaintiff's primary care physician. As this case centers around fibromyalgia, the error prejudiced plaintiff. As discussed below, this matter is remanded to the ALJ for further proceedings.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the

---

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.
[3] As discussed below, it is possible that Plaintiff's symptoms stem in part from a psychological condition.

evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The voluminous administrative record, containing nearly 2,000 pages, contains notes from approximately 100 appointments at Plaintiff's primary care provider. The record also contains notes of 50 or so appointments with Plaintiff's mental health therapist and tens of appointments with a pulmonary specialist. These providers were unanimous in believing Plaintiff suffered from fibromyalgia or chronic pain syndrome. *See* Tr. 1158 (Plaintiff's pulmonary specialist noted "The patient has multiple allergies which makes it difficult to deal with. I think a lot of them fit in this patient who has chronic pain syndrome."); *see also* Tr. 1634 (Plaintiff's primary care physician opined that "She has fibromyalgia, chronic back pain and depression/anxiety that are managed with multiple meds. Her function is stable but still remains poor overall."). The providers also believed a psychological impairment perhaps contributed to Plaintiff's condition. *See* Tr. 1129 (Dr. Kelly noted "It surprises me that she's having this much trouble. Again, I think there is a fair amount of psychological overlay with her cough and asthma."); *see also* Tr. 1123 (Dr. Kelly noted that Plaintiff "always seems to have more symptoms than we can find objectively."); *see also* Tr. 1188 (Plaintiff's FNP wrote "Highly recommend seeing a psychiatrist I will see if one is available through OHP I think she would highly benefit from a thorough evaluation for an accurate psychiatric diagnoses and CBT."); *see also* Tr. 1305 (Plaintiff's FNP wrote "She has an underlying mental disorder that she is seeing a specialist about. She feels her underlying mental disability hinders her ability to eat well and life

a balanced life."); *see also* Tr. 1540 (Plaintiff's therapist opined that Plaintiff "has psychosomatic pain in her leg."). Plaintiff too was cognizant that "her mental issues are impairing her ability to maintain a household herself or enable her to work." Tr. 1185.

In *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017), the Ninth Circuit discussed the "unique characteristics of fibromyalgia" in disability determinations. *Id.* at 652.

> Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. *The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. There are no laboratory tests to confirm the diagnosis.*

*Id.* at 656 (emphasis added, internal quotation marks and citations omitted).

In addition to the lack of any objective, laboratory testing that might confirm the diagnosis, the symptoms of fibromyalgia are known to "wax and wane," with the result that patients have good days and bad days. *Id.* at 657. "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods[.]" *Id.* at 662.

Here, the ALJ concluded that "The diagnosis of fibromyalgia is not corroborated or supported, and the record does not support it as a medically determinable impairment." Tr. 21. In determining Plaintiff's fibromyalgia was not a severe impairment, the ALJ noted the record contained little objective findings as to Plaintiff's fibromyalgia. Specifically, the record did not contain any results of trigger point testing. As relevant here, under the regulations—and consistent with the 1990 American College of Rheumatology Criteria—a diagnosis of

fibromyalgia must be supported with at least 11 (out of 18) tender points on examination. Social Security Ruling (SSR) 12-2P, at *2-3. The agency promulgated SSR 12-2P in 2012 and the Ninth Circuit notes that the ruling—the first recognizing fibromyalgia as a valid impairment under the Act—was a "sea change" in the area of social security disability. *Revels*, 874 F.3d at 656. Indeed, Fibromyalgia was, until quite recently, "poorly understood within much of the medical community." *Id.* (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)).

The ALJ then concluded Plaintiff was less-than fully credible as to the extent of her limitations. In making this determination, the ALJ repeatedly noted the objective findings did not support Plaintiff's allegations of debilitating pain. *See* Tr. 26 (noting the objective medical "findings are not consistent with the extent of the symptoms and limitations alleged by the claimant" and that the "modest objective findings" of Plaintiff's spine are "not consistent with the degree of debilitation alleged by the claimant."); *see also* Tr. 27 ("Subsequent records continue to document unremarkable findings that are not consistent with allegations of debilitating pain and limitations."); *see also* Tr. 28 ("The medical evidence therefore documents modest findings on imaging and consistently unremarkable physical examination findings with occasional spasm and tenderness, findings that are not consistent with the claimant's allegation of debilitating pain and significant limitations in her ability to sit, stand, walk, and use her arms."). The ALJ also found that Plaintiff's daily activities rendered her allegations less-than fully credible. However, the ALJ's focus on the relatively benign objective findings crept into the daily activities analysis. *See* Tr. 31 ("The claimant's activities, *when considered in connection with the modest objective medical evidence*, indicate greater functioning than alleged and are not consistent with her allegations of debilitating impairments." (emphasis added)).

Courts within the District of Oregon have been especially reluctant to rely on a lack of objective medical evidence when considering fibromyalgia cases. *See, e.g., Nunn v. Berryhill*, Case No. 6:17-cv-00203-SB, 2018 WL 2244705, at *10 (D. Or. May 16, 2018) (rejecting a lack of objective medical evidence as a valid factor in considering a fibromyalgia claimant's testimony); *Bair v. Comm'r*, 3:17-CV-00622, 2018 WL 2120274, at *5 (D. Or. May 8, 2018) (holding same). In light of *Revels*, this Court recognizes that Fibromyalgia is notable for the lack of objective medical tests and is often accompanied by apparently normal strength and musculoskeletal examinations. The lack of objective medical evidence cannot, therefore, serve as a clear and convincing reason for rejecting a Plaintiff's testimony concerning pain stemming from an acceptable medical diagnosis of Fibromyalgia.

As noted above, in rejecting the consistent treatment notes from multiple providers[4] contained in roughly 200 treating appointments over nearly ten years that unanimously agreed Plaintiff suffered from Fibromyalgia, the ALJ pointed to the lack of any trigger point testing in the record. Additionally, the ALJ specifically noted that Plaintiff "has not seen a rheumatologist or specialist related to fibromyalgia, and primary care records do not document the required findings; it appears that the diagnosis is contained in other records as part of the claimant's reported medical history." Tr. 21. While it is true that Plaintiff never saw a fibromyalgia specialist, it was not for a lack of trying. Plaintiff's primary care provider referred Plaintiff to a fibromyalgia clinic but the Oregon Health Plan denied the consultation. Tr. 1254. This denial occurred in 2012, the same year the agency issued SRR 12-2P adopting the need for trigger point testing to confirm a Fibromyalgia diagnosis.

In light of the "poorly understood" nature of Fibromyalgia during the relevant time period, the addition of SSR 12-2P (and the need for trigger point testing) into the analysis of

---

[4] In addition to treatment from doctors, Plaintiff was often treated by a FNP or a mental health therapist.

Plaintiff's claim, and the consistent and universal notes regarding Fibromyalgia from Plaintiff's treating providers, the ALJ erred in rejecting outright any evidence related to Fibromyalgia in evaluating Plaintiff's claim. Under the unique circumstances here, the ambiguity regarding Plaintiff's Fibromyalgia diagnosis triggered the ALJ's duty to further develop the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (noting the ALJ's "duty to fully and fairly develop the record . . . ." (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). This duty to develop the record extends to both ambiguous evidence and occasions where "the record is inadequate to allow for proper evaluation of the evidence[.]" *Id.*

Here, the record contains over one hundred treating notes containing a diagnosis of Fibromyalgia. It is clear that Plaintiff and all of her treating providers believed she had Fibromyalgia. However, the record is absent regarding the diagnostic techniques, if any, supporting that diagnosis. Considering Plaintiff's claims rely nearly entirely on the validity of her Fibromyalgia diagnosis, the ALJ's decision to proceed without submitting questions to Plaintiff's physicians, ordering a consultative examination, or even raising the concern and keeping the record open for further supplementation of the record resulted in prejudicial error. *Id.* The error is magnified because, as demonstrated above, the ALJ pointed to the lack of objective medical evidence when finding Plaintiff less-than fully credible. As Fibromyalgia is notable for the lack of objective medical tests and is often accompanied by apparently normal strength and musculoskeletal examinations, it is quite possible that a valid diagnosis would result in the ALJ viewing Plaintiff's claim in a different light.[5]

---

[5] As with Plaintiff's subjective limitations, the ALJ gave little weight to the opinion of Plaintiff's primary care provider that Plaintiff's impairments, along with the increased stress from working full time, would cause Plaintiff to miss more than four days of work each month. The ALJ pointed to the contrast between the physician's opinion and the relatively benign objective results in discounting the opinion. Tr. 32-33.

This is not a matter where remand for an award of benefits is appropriate. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). Here, further proceedings could well serve a useful purpose; i.e., confirming that Plaintiff's Fibromyalgia diagnosis is a valid, medically determinable impairment under the Act. Absent a medically determinable impairment, one cannot demonstrate the existence of a "severe" impairment under the Act. 20 C.F.R. § 404.1521. Under the regulations, the agency "will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.* Further proceedings are necessary to determine if Plaintiff's impairment "result[s] from anatomical, physiological, or psychological abnormalities *that can be shown by medically acceptable clinical and laboratory diagnostic techniques*." *Id.* (emphasis added). If not, no matter how limited Plaintiff is, she simply does not qualify for disability under the Act.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is reversed and this matter is remanded for further proceedings. On remand, the ALJ shall further develop the record regarding Plaintiff's Fibromyalgia. The Court declines to specify the exact steps the ALJ must take to comply with that duty. The options vary but could include subpoenaing Plaintiff's primary care physician, submitting questions to the physician, referring Plaintiff to a Fibromyalgia specialist (as attempted unsuccessfully seven years ago), or a combination of the above. Additionally, considering the numerous statements from treating providers regarding a potential psychological impairment impacting Plaintiff's symptomatology, referral for a full psychological evaluation

appears prudent.[6] The goal is to further develop the record to allow for a fair evaluation of Plaintiff's impairments. Following additional development of the record, the ALJ shall conduct a new five-step sequential analysis.

        IT IS SO ORDERED.

        DATED this 2nd day of July, 2019.

                                                        /s/ Michael McShane
                                                              Michael McShane
                                                        United States District Judge

---

[6] Although Plaintiff received diagnoses of PTSD, Depressive Disorder, and Anxiety, it appears no one considered whether Plaintiff suffered from a Conversion or Somatic Symptom Disorder. "A 'conversion disorder' is one form of a [somatic symptom] disorder – a psychiatric syndrome where the patient's symptoms suggest medical disease, but no demonstrable pathology accounts for the [physical] symptoms. A conversion disorder is specifically characterized by a loss of, or change in, motor or sensory functioning resulting from psychological factors. The physical symptoms cannot be explained medically. Patients lack voluntary control of their symptoms." *Herring v. Veterans Admin*., 1996 WL 32147, at *1 n.1 (9th Cir. 1996) (unpublished) (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 445 (4th ed. 1994)). As noted above, there are numerous comments regarding a psychosomatic aspect to Plaintiff's pain. Tr. 1123, 1540.

9 – OPINION AND ORDER